**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SUSAN LATTA; TRACI EHLERS; LORI
WATSEN; SHARENE WATSEN;
SHELIA ROBERTSON; ANDREA
ALTMAYER; AMBER BEIERLE;
RACHAEL ROBERTSON,
     *Plaintiffs-Appellees*,

    v.

C. L. OTTER, "Butch"; Governor of
the State of Idaho, in his official
capacity,
     *Defendant-Appellant*,

    and

CHRISTOPHER RICH, Recorder of
Ada County, Idaho, in his official
capacity,
     *Defendant*,

STATE OF IDAHO,
     *Intervenor-Defendant*.

No. 14-35420

D.C. No.
1:13-cv-00482-
CWD

SUSAN LATTA; TRACI EHLERS; LORI
WATSEN; SHARENE WATSEN;
SHELIA ROBERTSON; ANDREA
ALTMAYER; AMBER BEIERLE;
RACHAEL ROBERTSON,
*Plaintiffs-Appellees*,

v.

C. L. OTTER, "Butch"; Governor of
the State of Idaho, in his official
capacity,
*Defendant*,

and

CHRISTOPHER RICH, Recorder of
Ada County, Idaho, in his official
capacity,
*Defendant-Appellant*,

STATE OF IDAHO,
*Intervenor-Defendant–Appellant*.

No. 14-35421

D.C. No.
1:13-cv-00482-
CWD

OPINION RE:
ORDER

Appeal from the United States District Court
for the District of Idaho
Candy W. Dale, Magistrate Judge, Presiding

Argued and Submitted
September 8, 2014—San Francisco, California

Filed October 15, 2014

Before: Stephen Reinhardt, Ronald M. Gould,
and Marsha S. Berzon, Circuit Judges.

Per Curiam Opinion

**SUMMARY**[*]

**Civil Rights**

The panel granted the plaintiffs' motion for a dissolution of the stay of the district court's order enjoining enforcement of Idaho's same-sex marriage bans.

In *Latta v. Otter*, No. 14-35420, 2014 WL 4977682 (9th Cir. Oct. 7, 2014), the panel decided the present appeal, and held unconstitutional Idaho's statutes and constitutional amendments preventing same-sex couples from marrying and refusing to recognize same-sex marriages performed elsewhere. The panel held that in light of its decision and the other recent decisions by circuit courts across the country in essentially identical cases, as well as the Supreme Court's decisions on October 6, 2014 to deny certiorari in all pending same-sex marriage cases and thus to permit same-sex marriages in all affected states notwithstanding any state statute or constitutional provisions to the contrary, Idaho Governor Otter could no longer meet the test for the grant or continuation of a stay.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel granted the plaintiffs' motion for dissolution of the stay of the district court's order on October 13, 2014, but exercised its discretion to afford the state a second opportunity to obtain an emergency stay of the panel's order from the Supreme Court.  For that reason, the panel's order of October 13, 2014 was not made effective until 9 a.m. PDT (noon EST) on October 15, 2014.

**OPINION**

PER CURIAM:

On October 10, 2014, the plaintiffs moved for dissolution of the stay of the district court's order enjoining the enforcement of Idaho's laws prohibiting same-sex marriage. In *Latta v. Otter*, No. 14-35420, 2014 WL 4977682 (9th Cir. Oct. 7, 2014), we decided the appeal, and held unconstitutional Idaho's statutes and constitutional amendments preventing same-sex couples from marrying and refusing to recognize same-sex marriages performed elsewhere.  The stay pending appeal was issued a number of months ago, before the relevant factual and legal developments that dictate the outcome of the present motion. In light of our decision in *Latta* and the other recent decisions by circuit courts across the country in essentially identical cases, as well as the Supreme Court's decisions on October 6, 2014 to deny certiorari in all pending same-sex marriage cases and thus to permit same-sex marriages in all affected states notwithstanding any state statute or constitutional provisions to the contrary, Governor Otter can no longer meet the test for the grant or continuation of a stay. We therefore granted the plaintiffs' motion for dissolution of the stay of the

district court's order on October 13, 2014, effective October 15, 2014.

The party seeking a stay—or continuation of a stay—bears the burden of showing his entitlement to a stay. *See Nken v. Holder*, 556 U.S. 418, 433–44 (2009). In ruling on the propriety of a stay, we consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434.

Governor Otter cannot make a strong showing that he is likely to succeed on the merits. *See id.* We have now held that the plaintiffs have in fact succeeded on the merits of the case, agreeing with every court of appeals to address same-sex marriage bans subsequent to *United States v. Windsor*, 133 S. Ct. 2675 (2013). Governor Otter argues that reversal of this case—either via certiorari review or en banc proceedings—remains likely because we applied heightened scrutiny to the laws at issue, whereas nine other circuits have declined to hold that gays and lesbians constitute a suspect class. Governor Otter is wrong. The cases he cites all predate *Windsor*. The post-*Windsor* cases either do not reach the question of whether heightened scrutiny under the Equal Protection Clause applies (while applying strict scrutiny under a fundamental rights analysis) or suggest that heightened scrutiny review under the Equal Protection Clause may be applicable. *See Baskin v. Bogan*, No. 14-2386, 2014 WL 4359059, *1–3 (7th Cir. Sept. 4, 2014); *Bostic v. Schaefer*, 760 F.3d 352, 375 n.6 (4th Cir. 2014); *Bishop v.*

*Smith*, 760 F.3d 1070, 1074 (10th Cir. 2014); *Kitchen v. Herbert*, 755 F.3d 1193, 1229–30 (10th Cir. 2014).

The panel's decision in this case was dictated by *SmithKline Beecham Corp. v. Abbott Labs.*, 740 F.3d 471 (9th Cir. 2014), which held that heightened scrutiny applies to classifications on the basis of sexual orientation. This court voted not to rehear *SmithKline* en banc only a short time ago, and we are bound by its actions. Specifically, *SmithKline* is the binding law of the circuit. Moreover, the various courts of appeals to have considered the issue of same-sex marriage post-*Windsor* have all reached the same result—the invalidation of same-sex marriage bans. These courts have applied varying types of scrutiny or have failed to identify clearly any applicable level, but irrespective of the standard have all reached the same result. Finally, the fact that we applied heightened scrutiny is irrelevant to whether the Supreme Court is likely to grant certiorari to review our decision. The Court is free to review—or not review—the type of scrutiny applied to classifications based on sexual orientation in *any* case challenging a ban on same-sex marriage. The level of scrutiny applied in a particular case is not likely to affect its decision as to which, if any, same-sex marriage case it may ultimately review. Governor Otter's arguments that are based on *SmithKline* or the level of scrutiny applied are thus unpersuasive.

Moreover, when a motions panel of this court originally entered the stay of the district court's order, it did so based on the Supreme Court's stay in *Herbert v. Kitchen*, 143 S. Ct. 893 (2014), the Utah same-sex marriage case. However, on Monday, October 6, the Supreme Court denied certiorari and vacated stays in all seven of the same-sex marriage cases that were pending before it, including *Herbert*. As a result of the

Supreme Court's action, marriages have begun in those states. At the time the Supreme Court denied certiorari in all the pending cases, it was aware that there were cases pending in other circuit courts that had not yet been decided but that might subsequently create a conflict. The existence of those pending cases, and the possibility of a future conflict, did not affect the Court's decision to permit the marriages to proceed, and thus, Governor Otter's argument that we should maintain the stay in order to await the results of cases pending in other circuits is unavailing.

Additionally, after the panel's issuance of the merits decision in this case affirming the district court's injunction, the Supreme Court denied Idaho's application for a stay of this court's mandate without published dissent, and vacated Justice Kennedy's temporary stay entered two days earlier. It did so despite Idaho's representation to the Court that granting its application was necessary to allow the Court to exercise its "unique role as final arbiter of the profoundly important constitutional questions surrounding the constitutionality of State marriage laws." Because the Supreme Court has thus rejected the argument that a stay was necessary to any potential exercise of its jurisdiction to review this case, we decline to second-guess that decision. The first *Nken* factor strongly supports dissolution of the stay.

We now turn to the second and third factors governing the propriety of a stay: whether irreparable injury to the applicant will result absent a stay and whether continuance of the stay will injure other parties interested in the proceeding. On the one hand, there is some authority suggesting that "a state suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *but see Indep.*

*Living Ctr. of So. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 658 (9th Cir. 2009) (characterizing this statement in *Coal. for Econ. Equity* as dicta, and explaining that while "a state may suffer an abstract form of harm whenever one of its acts is enjoined . . . [t]o the extent that is true . . . it is not dispositive of the balance of harms analysis."), *vacated and remanded on other grounds sub nom. Douglas v. Indep. Living Ctr. of So. Cal, Inc.*, 132 S. Ct. 1204 (2012).[1] On the other hand, the plaintiffs and countless gay and lesbian Idahoans would face irreparable injury were we to permit the stay to continue in effect. "Idaho['s] . . . marriage laws, by preventing same-sex couples from marrying and refusing to recognize same-sex marriages celebrated elsewhere, impose profound legal, financial, social and psychic harms on numerous citizens of those states." *Latta*, 2014 WL 4977682 at \*11; *see also Baskin v. Bogan*, 14-2386, 2014 WL 4359059 (7th Cir. Sept. 4, 2014) ("The harm to homosexuals (and . . . to their adopted children) of being denied the right to marry is considerable."); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (holding that a deprivation of constitutional rights, "for even minimal periods of time, unquestionably constitutes irreparable injury"). Additionally, were this case to be reversed, notwithstanding our firm belief that such an outcome is unlikely, the harm caused by the invalidation of marriages that take place in the interim would primarily be suffered by the couples whose marriages might be rendered of uncertain legality and by their children—not by the state.

---

[1] Individual justices, in orders issued from chambers, have expressed the view that a state suffers irreparable injury when one of its laws is enjoined. *See Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers); *New Motor Vehicle Bd. of California v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). No opinion for the Court adopts this view.

On balance, we conclude that the second and third *Nken* factors also support dissolution of the stay.

Finally, we hold that the fourth factor governing issuance or continuance of a stay—the public interest—militates strongly in favor of dissolution of the stay. We repeat: by denying certiorari on October 6, 2014, the Supreme Court has allowed marriages to proceed in fourteen[2] states across the nation; all circuit courts of appeals to consider same-sex marriage bans have invalidated those prohibitions as unconstitutional; and this court has held that same-sex marriage bans deprive gays and lesbians of their constitutional rights. The public's interest in equality of treatment of persons deprived of important constitutional rights thus also supports dissolution of the stay of the district court's order.

Applying the four *Nken* factors discussed above, we hold that Governor Otter is no longer entitled to a stay of the district court's order and we accordingly dissolve the stay effective October 15, 2014. We decline to deny the plaintiffs their constitutional rights any longer.

Notwithstanding the above, we have determined to exercise our discretion to afford the state a second opportunity to obtain an emergency stay of our order from the Supreme Court, even though we see no possible basis for

---

[2] This figure represents the number of states in circuits directly affected by the Supreme Court's denial on October 6, 2014 of petitions arising from challenges to state bans on same-sex marriage. We note that thirty-three states as well as the District of Columbia either presently allow same-sex marriages or are located in circuits affected by the Supreme Court's denials. This figure includes Idaho and Alaska.

such a stay. For that reason, our order of October 13, 2014 is not made effective until 9 a.m. PDT (noon EST) on October 15, 2014. Otherwise we have determined that the stay of the district court's order enjoining enforcement of Idaho's same-sex marriage bans shall be dissolved and have entered the order of this court to that effect.